## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

JERACA MIDDLEBROOKS,                )
                                )
    Plaintiff,            )
                                )
v.                                  )   Case No.:  4:22-cv-1084-JHE
                                )
KILOLO KIJAKAZI, ACTING             )
COMMISSIONER OF SOCIAL SECURITY     )
ADMINISTRATION,                     )
                                )
    Defendant.            )

## MEMORANDUM OPINION

Plaintiff Jeraca Middlebrooks, acting through counsel, seeks review pursuant to § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying disability insurance benefits.  (Doc. 1) [1].  The Commissioner has filed an answer that includes the administrative record. (Doc. 9).  The parties have consented to an exercise of plenary jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 11), and each side has filed a brief setting out their respective positions on the Commissioner's decision and Plaintiff's claims.  (Docs. 16, 17).  For the reasons stated below, the Commissioner's decision is due to be **AFFIRMED**.

### I. Procedural History

In April 2020, Plaintiff applied for a period of disability and disability insurance benefits under Title II of the Act, alleging she became unable to work beginning January 3, 2020.  (Tr. 205-207) [2].  Her claim was denied both initially and upon reconsideration.  (Tr. 110-115, 117-119).

---

[1] References to "Doc(s) ___" are to the document number(s) of the pleadings, motions, orders, exhibits, and other materials in the court file, as compiled and enumerated on the docket sheet by the Clerk.

[2] References to "Tr. __" are to the page(s) of the administrative transcript, found in Doc. 9-3 (Tr. 1-63), Doc. 9-4

Plaintiff was granted a hearing before an Administrative Law Judge ("ALJ") on December 21, 2021, at which Plaintiff was represented by legal counsel.  (*See* Tr. 31-63).  On March 11, 2022, the ALJ, acting on behalf of the Commissioner, issued a decision finding that Plaintiff was not disabled (Tr. 12-25). The Appeals Council denied review.  (Tr. 1-6).  Plaintiff filed this action on August 28, 2022.  (Doc. 1).

## II. Standard of Review

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings supported by substantial evidence.  "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder.  Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  However, the court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the

---

(Tr. 64-109), Doc. 9-5 (Tr. 110-204), Doc. 9-6 (Tr. 205-229), Doc. 9-7 (Tr. 230-295), Doc. 9-8 (Tr. 296-433), and Doc. 9-9 (Tr. 434-532).  *See also* Doc. 9-2, which contains an index of items in the administrative transcript.

ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505 (a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520 (a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is engaged in substantial gainful activity

(2) whether the claimant has a severe impairment;

(3)  whether the claimant's impairment meets or equals an impairment listed by the SSA;

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1312 (11th Cir. 2021).  If a claimant satisfies Steps One and Two, he or she is automatically found disabled if he or she suffers from a listed

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

impairment. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). "Once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Id.* (cleaned up).

### IV. The ALJ's Decision

The ALJ applied the sequential evaluation set out in the regulations as follows: At Step One, she found that Plaintiff meets the insured status requirements of the Act through December 31, 2024, and that she had not engaged in substantial gainful activity since her alleged onset date. (Tr. 17). At Step Two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease, carpal tunnel syndrome, status post right release, obesity, depression, anxiety, attention deficit hypertension disorder, and asthma. (Tr. 17). At Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18).

Before proceeding to Step Four, the ALJ determined Plaintiff's residual functional capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), with a number of additional non-exertional limitations, namely that she can: (1) frequently climb ramps and stairs, stoop, kneel, and crouch; (2) occasionally crawl; (3) never climb ladders, ropes or scaffolds; (4) frequently handle and finger with her bilateral upper extremities; (5) occasionally reach overhead with her bilateral upper extremities; (6) have only occasional exposure to extremes of cold, full body vibration and atmospheric conditions, *i.e.*, dusts, odors, fumes and pulmonary irritants; (7) have no exposure to hazards such as unprotected heights and hazardous machinery; (8) understand, remember, and carry out simple instructions and tasks;

(9) tolerate changes in the workplace that are infrequent and gradually introduced; and (10) have occasional work-related interaction with supervisors, coworkers, and the general public.  (Tr. 19, 21).  The ALJ determined at Step Four that such RFC would preclude Plaintiff from returning to her past relevant work.  (Tr. 23).  At Step Five, however, the ALJ concluded, based on hearing testimony from a vocational expert, that Plaintiff could perform other work, including marker (putting price tags on items), router (sorting items for distribution), and mail clerk.  (Tr. 24, *see also* Tr. 59-61).  Therefore, the ALJ determined on behalf of the Commissioner that Plaintiff was not disabled.  (Tr. 24-25).

## V. Analysis

Plaintiff challenges the Commissioner's decision on two grounds, both directed at the ALJ's rejection in part of Plaintiff's testimony regarding her pain, other symptoms, and associated functional limitations.  Specifically, Plaintiff contests the ALJ's finding that she can perform light work, claiming that: (1) her obesity "deserved far greater discussion" than that afforded by the ALJ (Doc. 16 at 13) and (2) the ALJ erred in finding that Plaintiff can "frequently" handle and finger items with both upper extremities.  (*Id.* at 14).  These claims are addressed in turn.

### A.  The ALJ Properly Addressed Obesity

Plaintiff first contends that the ALJ did not sufficiently consider and address Plaintiff's obesity.  The ALJ, however, repeatedly acknowledged Plaintiff's obesity throughout her discussion of the evidence, deemed it to be a severe impairment, and associated it with functional limitations.  (Tr. 17, 18, 20, 21, 22).  The ALJ also stated expressly that it had been considered along with Plaintiff's other impairments in accordance with Social Security Ruling 19-2p, "Evaluating Cases Involving Obesity."  (Tr. 18).  Plaintiff complains generally that the ALJ should have done something more.  However, Plaintiff fails to meaningfully identify just what that might

have been, including what additional limitations that the ALJ was supposedly required to ascribe due to Plaintiff's obesity.  The record reflects that the ALJ properly addressed Plaintiff's obesity; the undersigned finds no error.  *See Castel v. Commissioner of Soc. Sec.*, 355 F. App'x 260, 263-64 (11th Cir. 2009) (holding ALJ properly considered obesity where ALJ referenced the relevant SSR and found obesity a severe impairment but did not ascribe specific functional limitations).

### B. The ALJ's Finding Regarding Plaintiff's Ability to Frequently Handle and Finger Bilaterally is Supported by Substantial Evidence

Plaintiff also contests the ALJ's findings regarding her RFC, specifically as it relates to the use of her arms and hands.  In her function report dated October 29, 2020, Plaintiff asserted that she has "numbness [and] pain in [her] right arm and hand," that she "can't use [her] right hand all the time"; that she has trouble reaching, using her hands, bathing, and writing; and that she cannot do household chores beyond helping her daughter get dressed for school.  (Tr. 248, 249, 250, 253). Describing how she generally spends her time each day, she stated that she will "mostly lay on [the] couch and rest [her] neck and shoulder."  (Tr. 249).  At the hearing before the ALJ in December 2021, Plaintiff similarly testified she has problems with both hands, with the right one being worse.  (Tr. 45).  She acknowledged having undergone carpal tunnel release surgery on that side (Tr. 40, 45), performed on April 15, 2021.  (Tr. 451, 452).  Plaintiff claimed, however, that the surgery had actually "made [her] hand worse," because she had "lost a lot of the strength" in it.  (Tr. 40).  Plaintiff further claimed to have "a lot" of a pain coming from her neck and "shoot[ing] down [her] right shoulder into [her] arm."  (Tr. 45).  Finally, because of her hand, and shoulder issues, Plaintiff maintained that she would not be able to sort things, work on a computer, or write things on a daily basis.  (Tr. 46-47).

Despite Plaintiff's responses on the function report form and her hearing testimony, the ALJ found that Plaintiff is able to handle and finger items with both upper extremities "frequently"

(Tr. 19).  In that context, the Social Security Administration defines "frequent" as occurring from one-third to two-thirds of the time during the workday.  Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251, at *6; *Alexander v. Commissioner of Soc. Sec. Admin.*, 2022 WL 4291335, at *3 (N.D. Ala. Sept. 16, 2022).  Plaintiff maintains that this ALJ finding is not supported by substantial evidence.

To evaluate such claims, the Eleventh Circuit has established a three-part "'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  The pain standard requires: (1) Evidence of an underlying medical condition and either (2) Objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) That the objectively determined medical condition is of such a severity that it can be reasonably be expected to give rise to the alleged pain.  *Id.*  In applying that standard, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms.  (Tr. 20).  The ALJ further found, however, that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record.  (Tr. 20).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of their symptoms, the ALJ considers all evidence, objective and subjective.  *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p, 1996 WL 364186 at *4–5. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96–7p, 1996 WL 364186 at * 4–8.  If an ALJ discredits a claimant's subjective complaints, "he must articulate

explicit and adequate reasons for doing so." *Wilson v. Commissioner of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). In articulating reasons for discrediting subjective testimony, an ALJ need not refer to every piece of evidence in the record so long as the decision is not a broad rejection which leaves a district or appellate court unable to conclude that the medical condition was considered as a whole. *Petteway v. Commissioner of Soc. Sec.*, 353 F. App'x 287, 288 (11th Cir. 2009) (*citing Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Commissioner Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (*retreating from MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 2011), based on the prior precedent rule, and remanding to the agency).

In assessing the credibility of Plaintiff's testimony, the ALJ acknowledged that Plaintiff has a history of carpal tunnel syndrome and neck pain. (Tr. 20). Such included complaints in 2020 and 2021 of neck pain radiating into her right upper extremity, causing right shoulder pain and numbness. (Tr. 20; *see also* Tr. 313-315, 318-323, 335-336, 365-378, 382-388, 393, 395, 396, 462-465, 470-473, 482-499). The ALJ recognized that, in "early 2020 she had some pain with motion in her neck as well as some tenderness on the right side." (Tr. 20; *see also* Tr. 366). The ALJ also acknowledged that Plaintiff "has some disc degeneration, bone spurs, and osteophytes in the cervical spine, and there has been a popping sound noted at shoulder level." (Tr. 21). The ALJ further stated that, "at the end of 2020, [Plaintiff] was noted to have some decreased range of motion in her cervical spine, some weakness in the neck and bilateral upper extremities, and some palpable muscle spasms." (Tr. 20; *see also* Tr. 365-378). The ALJ also noted that nerve studies conducted in early 2021 showed mild to moderate carpal tunnel syndrome, for which she

underwent the release surgery on the right side.  (Tr. 20; *see also* 382-388, 434, 446-449, 451-452).

Despite this, the ALJ discounted Plaintiff's testimony, finding she could use both arms and hands to handle and finger objects frequently, citing various materials in the record.  (Tr. 19-23). The undersigned concludes that ALJ's finding is supported by substantial evidence.  First, several imaging and other diagnostic test results suggested Plaintiff has relatively minimal physical abnormalities.  For example, imaging studies in 2020 showed only "mild cervical degenerative changes."  (Tr. 20; *see also* Tr. 355 (2/27/20 Imaging Report, Cervical Spine, Three Views ("Impression: Normal exam"); Tr. 353-54 (9/4/20 Imaging Report, MRI Cervical Spine ("Impression: Mild cervical degenerative changes" at C3-4, 4-5, and 5-6, "with no acute process")).  Likewise, in early 2021, "cervical X-rays were deemed to show stable alignment without apparent listhesis [vertebral forward slipping], and CT scans showed very mild spondylosis [wear on the cartilage and bones of the neck]."  (Tr. 20; *see also* Tr. 396, 401, 403-405).  Finally, although nerve studies also performed in early 2021 were abnormal for mild to moderate carpal tunnel syndrome on the right side and mild on the left, Plaintiff's contemporaneously administered right cervical radicular screen, which the ALJ found to be "of note," was normal.  (Tr. 20; *see also* Tr. 384).

While the SSA states that it will not draw inferences about the severity or functional limitations based solely on findings on imaging or other diagnostic tests, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(C)(3)(c), such tests are objective medical evidence properly considered along with other evidence in assessing the credibility of a claimant's complaints of pain and limitation.  *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence … obtained from the application of medically acceptable clinical and laboratory diagnostic techniques … is a useful

indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."); *see also, e.g.*, *Douglas v. Commissioner, Soc. Sec. Admin.*, 832 F. App'x 650, 657 (11th Cir. 2020) ("The ALJ [properly] discussed the objective medical evidence—including Dr. Murray's findings and opinions, diagnostic imaging results, and treatment records from Grady regarding Douglas's hands and lower back—to conclude that the severity of Douglas's alleged pain and symptoms did not match her conditions."); *Morales v. Commissioner of Soc. Sec.*, 799 F. App'x 672, 677 (11th Cir. 2020) (holding that the ALJ's findings discounting the plaintiff's subjective complaints were supported by substantial evidence, including that the plaintiff "underwent numerous forms of imaging with unremarkable results.")

To that end, the ALJ also relied upon various clinical findings as supporting that Plaintiff's subjective complaints regarding her neck, shoulder, and arm pain and limitations were not entirely credible. The ALJ first recognized that, despite Plaintiff's complaints in 2020, "she had generally normal musculoskeletal [findings]," "good range of motion in her right shoulder," with "normal gait and station and normal sensation." (Tr. 20; *see also* Tr. 331). Likewise, the ALJ highlighted that, when seen in early 2021, she was noted to have "full strength throughout, and all nerves were intact." (Tr. 20; *see also* Tr. 395-396 (physical exam by Dr. Cheng Tao, 1/20/2021, "**Objective** … **Musculoskeletal** … Spurling[']s is negative bilaterally … **Muscle Strength** … Biceps, Triceps, Wrist Extensors, Hand Intrinsics, Grip [all 5/5 on left and right]")); Tr. 400-401 (follow up exam by Dr. Tao on 2/8/2021, with same findings; "On exam, her gait and posture is normal. She exhibits 5/5 strength throughout her bilateral upper extremities.")). The ALJ noted that based on Plaintiff's imaging studies and clinical presentation in early 2021, the doctor did not recommend surgical intervention. (Tr. 20; *see also* Tr. 401). Finally, the ALJ recognized that

after Plaintiff thereafter underwent right carpal tunnel release surgery in April 2021, follow up records showed that her thumb numbness resolved within a few months, that she reported doing better than before the surgery, and that she could make a full fist.  (Tr. 20-21 *see also* Tr. 518 (Dr. William Haller follow up visit 5/3/2021, noting, "She is doing better than pre-op at this point so resolution is likely" and "She is doing ok with the left hand at this point"); Tr. 514 (Dr. Haller follow up, 8/2/2021, "Hands and Digits: Inspection Right; no swelling, warmth, or erythema … tenderness of the palmar aspect … able to make a full fist"; "She has some lingering post op symptoms that will most likely resolve with time")).  The undersigned concludes that the above is substantial evidence to support the ALJ's findings.

## VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, the undersigned concludes that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits is due to be **AFFIRMED.**  A separate Final Order will be entered.

DONE this 20th day of March, 2024.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE